# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. ___1:23-cv-02661_____

KIM M. VELASQUEZ,

Plaintiff,

v.

NEW ERA DEBT SOLUTIONS, INC.,

Defendant.

## COMPLAINT

**NOW COMES** KIM M. VELASQUEZ ("Plaintiff"), by and through her undersigned counsel, complaining as to the conduct of NEW ERA DEBT SOLUTIONS, INC. ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Credit Repair Organizations Act ("CROA"), pursuant to 15 U.S.C. § 1679 *et seq.*, and the Colorado Credit Services Organization Act ("CCSOA"), pursuant to CO. Rev. Stat. 5-19-101 *et seq.*, for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the CROA and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3. Supplemental jurisdiction exists for the state claim pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) Plaintiff resides in the District of Colorado, and a substantial portion of the events or omissions giving rise to the claims occurred within the District of Colorado.

## PARTIES

5. Plaintiff is a consumer over 18 years-of-age residing in Aurora, Colorado.

6. Defendant is a credit repair organization that claims to "help people become free from the overwhelming pressure of excessive debt."[1] Defendant is a corporation organized under the laws of the state of California with its principal place of business located at 330 Wood Rd., Suite B, Camarillo, California 93010.

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

8. In November 2017, Plaintiff had a number of credit card debts which were impacting her credit, prompting her to begin looking for companies who may be able to assist her in improving her credit and resolving her obligations.

9. Subsequently thereafter, Plaintiff found Defendant due to its representations that it could help consumers resolve their obligations by negotiating with creditors to reduce its client's outstanding debts, to consolidate those debts, and to ultimately remove creditors from her consumer credit reports.

10. Plaintiff spoke with Defendant who advised that Defendant would be able to negotiate with her creditors to settle her debts, consolidate her debts and to get items removed from her consumer credit reports, and that in order to do so, Plaintiff would need to make monthly payments over a certain period of time, which would go towards Defendant resolving her obligations.

---

[1] https://neweradebtsolutions.com/why-new-era/about-new-era/

11. Defendant's credit service plan included consolidating Plaintiff's debts into one debt so that Plaintiff can make monthly payments which would go toward paying off her various creditors.

12. After discussing specific plans to address such debts, Defendant promised Plaintiff that its services would be able to settle her enrolled debts with all of her creditors within 1 to 2 years of signing up. Plaintiff detrimentally relied on Defendant's promises.

13. On November 19, 2017, Plaintiff then entered into a contract with Defendant for the provision of credit repair services.

14. In accordance with the terms of the agreement, Plaintiff proceeded to pay Defendant around $1,997.20 per month in exchange for Defendant's services of consolidation, debt resolution, and credit repair to remove negative material from Plaintiff's credit files.

15. After signing up, Defendant told Plaintiff to stop paying any of her creditors as they will handle her enrolled debts, despite Plaintiff being current and up to date on payments with her creditors.

16. Plaintiff proceeded to make her monthly payments to Defendant in a timely and consistent manner.

17. In 2019, Plaintiff discovered none of her debts with the identified creditors had been consolidated or settled as promised.

18. Plaintiff further discovered that her credit score had dropped significantly after enrolling her debts with Defendant's debt consolidation and credit repair services.

19. Throughout their dealings, Defendant deceptively and misleadingly strung Plaintiff along, telling her what she wanted to hear in order for her to keep making payments, only to turn

around and fail to deliver on the promises and representations that induced Plaintiff's continued participation in Defendant's debt consolidation and credit repair services.

20. Defendant promised Plaintiff that her debts would be handled with care and that all of her debts would be resolved with Plaintiff's creditors.

21. Despite telling Plaintiff it would negotiate with creditors to settle her outstanding debts, Defendant failed to properly engage with Plaintiff's creditors. As such, none of Plaintiff's enrolled debts were settled, which caused her credit score to drop significantly and fall into default status with each of her enrolled creditors who Defendant told her to stop paying.

22. Upon realizing the nature of Defendant's scheme and the full extent of their misrepresentations, Plaintiff advised Defendant that she would be cancelling her contract, and further began exploring her legal options to address to Defendant's conduct.

23. In total, Plaintiff paid Defendant around $20,000 for promises Defendant failed to fulfill.

24. Despite making timely monthly payments, Defendant did not properly handle Plaintiff's enrolled debts that she wanted addressed.

25. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned attorney regarding her rights.

26. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, payments made to Defendant in violation of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations and debt management companies.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

27. Plaintiff repeats and realleges paragraphs 1 through 26 as though fully set forth herein.

28. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

29. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

   **a. Violations of CROA § 1679b(a)**

30. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

31. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. In order to get Plaintiff to agree to utilize Defendant's services, Defendant represented that its services would reduce her outstanding debts and would eventually remove the negatively reporting items from her credit reports, however, Defendant completely failed to follow through on these promises or the services it represented it would perform for Plaintiff.

32. Throughout its dealing Defendant would continue to assure Plaintiff that her accounts were being handled with care, however, Plaintiff saw no improvement to her credit report and needed to settle many of her debts with her creditors on her own.

   **b.     Violations of CROA § 1679b(b)**

33. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

34. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Despite Plaintiff paying Defendant for its services, Defendant completely failed to perform the services it represented it would perform while simultaneously retaining Plaintiff's payments for fees.

   **c.     Violations of CROA § 1679d(4) & 1679e**

35. The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" (emphasis added). 15 U.S.C. § 1679e further outlines the extent of a consumer's cancellation rights under CROA while requiring such disclosure to be given to consumers in writing.

36. Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature

on the contract, as well as its failure to provide the full notice of cancellation to Plaintiff outlining that Plaintiff may cancel prior to the third business day.

**WHEREFORE**, Plaintiff KIM M. VELASQUEZ, respectfully requests that this Honorable Court enter judgment in her favor as follows:

    a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

    b.    Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

    c.    Awarding Plaintiff punitive damages as provided under 15 U.S.C. § 1679g(a)(2)(A);

    d.    Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

    e.    Awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT II - VIOLATIONS OF THE COLORADO CREDIT SERVICES ORGANIZATION ACT**

37.    Plaintiff restates and realleges paragraphs 1 through 36 as though fully set forth herein.

38.    Plaintiff is a "buyer" as defined by CO. Rev. Stat. § 5-19-103(1).

39.    Defendant is a "credit services organization" as defined by CO. Rev. Stat. § 5-19-103(2).

    **a.**    **Violation of CCSOA § 5-19-104**

40.    The MCSPA, pursuant to CO. Rev. Stat. § 5-19-104, provides a list of prohibited conduct for credit services organizations.

41. Pursuant to CO. Rev. Stat. § 5-19-104(a), "a credit services organization shall not… [c]harge or receive any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for the buyer."

42. Defendant violated CO. Rev. Stat. § 5-19-104(a) through its charging of Plaintiff prior to full and complete performance of its services without reimbursing Plaintiff for its incomplete services.

43. Pursuant to CO. Rev. Stat. § 5-19-104(c), "a credit services organization shall not… [m]ake or use any untrue or misleading representations in the offer or sale of the services of a credit services organization or engage, directly or indirectly, in any act, practice, or course of business that operates or would operate as fraud or deception upon any person in connection with the offer or sale of the services of a credit services organization."

44. Defendant violated CO. Rev. Stat. § 5-19-104(c), by promising Plaintiff that it would be able to reduce Plaintiff's outstanding debts and eventually remove those debts from her consumer credit reports and improve her overall creditworthiness.

  b. **Violation of CCSOA § 5-19-107**

45. Pursuant to CO. Rev. Stat. § 5-19-107(a), "A conspicuous statement in bold-faced type, in immediate proximity to the space reserved for the signature of the buyer, as follows: 'You, the buyer, may cancel this contract at any time prior to midnight of the fifth working day after the date of the transaction. See the attached notice of cancellation form for an explanation of this right.'"

46. Defendant violated CO. Rev. Stat. § 5-19-107(a) for failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature on the contract.

**WHEREFORE**, Plaintiff KIM M. VELASQUEZ, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Award Plaintiff actual damages pursuant to CO. Rev. Stat. § 5-19-111;

c. Award Plaintiff punitive damages pursuant to CO. Rev. Stat. § 5-19-111;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to CO. Rev. Stat. § 5-19-111; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: October 12, 2023                                    Respectfully submitted,

*/s/ Marwan R. Daher*
Marwan R. Daher, Esq.
Sulaiman Law Group, Ltd.
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
Fax: (630) 575-8188
mdaher@sulaimanlaw.com
*Counsel for Plaintiff*